BROGAN *et al. v.* HOSEY, MAYOR *et al.*

(Division B. May 20, 1935.)

[161 So. 690. No. 31727.]

**F. B. Collins**, of Laurel, for appellants.

**J. R. Buchanan,** of Laurel, for appellees.

**Anderson, J.,** delivered the opinion of the court.

Appellants were prosecuted for operating passenger taxicabs on the streets of the city of Laurel without having first obtained a permit so to do, as required by an ordinance of the city adopted on the 22d of October, 1934. They filed their bill in the chancery court of Jones county against appellees, the city authorities, enjoining their further prosecution, upon the ground that the ordinance was void. A temporary injunction was obtained. On bill and answer the injunction was dissolved and the bill dismissed. From that decree appellants prosecute this appeal.

The ordinance provided that no person, firm, or corporation should operate any public taxicab or other vehicle for carrying passengers for hire on the streets of Laurel without first securing a permit from the mayor and commissioners of the city. Section 3 of the ordi-

nance, around which the controversy hinges, is in this language:

"No person, firm or corporation shall operate or cause to be operated on the avenues, streets, or alleys of the city of Laurel any taxi or other vehicle for carrying passengers for hire, without first having secured a permit, as heretofore stated, and after having secured liability insurance on each such taxi or vehicle in some reliable insurance or surety company authorized to do business in the state of Mississippi, in the sum of five thousand and ten thousand dollars ($5,000 and $10,000), that is, five thousand dollars for any one injury, and ten thousand dollars for total injury in any one accident, with provision for not less than one thousand dollars property damage liability insurance, which said liability insurance shall be paid for and the policy together with a receipt of payment of premium thereon, filed with the city clerk of the city of Laurel, and in the event the future premiums on said liability insurance policy be not paid then the permit is automatically canceled without notice. In the event the said liability insurance is not carried and paid for, and if the person operating, or causing to be operated, such taxi or other vehicle carrying passengers for hire in said city may elect to give a bond payable to the city of Laurel, Mississippi, in the sum of five thousand dollars, with either a surety company authorized to do business in the state of Mississippi, or personal sureties, said bond to be approved by the mayor and board of commissioners by order upon the minutes, said bond to cover any personal injuries or property damage caused by said taxi or other vehicle."

Section 10 provides that any person, firm, or corporation violating any provision of the ordinance shall be guilty of a misdemeanor, and upon conviction fined not exceeding one hundred dollars, or sentenced to jail not

exceeding thirty days, or both, and all permits shall be automatically canceled.

Prior to the adoption of this ordinance, there was in force an ordinance of the city adopted February 14, 1921, which provided, among other things, that all drivers and operators of vehicles for hire in the city, before getting a permit to carry on their business, should file with the city clerk a bond in the sum of two thousand five hundred dollars with two or more sufficient sureties, payable to the city, such bond to inure to the benefit of any person who might become injured by the negligence of the driver, with the provision that suit might be brought thereon in the name of the city for the benefit of the injured person.

After the adoption of the ordinance of 1921 and before the adoption of the ordinance of 1934, sections 5596 to 5601, inclusive, Code 1930, were enacted. On the 1st of September, 1934, appellants applied to the city authorities for permits under the ordinance of 1921, and filed with their applications bonds in the sum of two thousand five hundred dollars each, properly conditioned with sureties. These bonds were never approved nor were permits granted. After the ordinance of October 22, 1934, was adopted, the city authorities returned the bonds with a notation that they were insolvent.

The ordinance is attacked upon three grounds: (1) That it was enacted without authority of law; (2) that it is unreasonable; and (3) that its enforcement against appellants would violate the contract clause of both the state and Federal Constitutions, in that they were entitled to permits under the ordinance of 1921, which constituted a contract between them and the city, which the enforcement of the ordinance of 1934, would abrogate.

Section 5596, Code 1930, provides, among other things, that municipalities may require operators of motor vehicles for hire to give a reasonable bond of not more than five hundred dollars "to guarantee the faithful ob-

servance of the law as well as the rules and regulations which may be prescribed by the said municipality.'' It is argued that this provision excludes the right of municipalities to require any other bond. There is no merit in this contention. The bond provided for has nothing to do with the liability of operators of motor vehicles for damages for injuries to persons and property. The statute deals alone with bonds for the faithful performance by them of the laws of the municipality—the traffic laws. Liability on such a bond is to the municipality alone.

For a further discussion of the questions involved, we do not think we could do better than to adopt the opinion of the chancellor, which is made a part of the record in the case:

''Section 2434 of the Code of 1930, granting power to municipalities reads this way. 'Third.—*Protection of Strangers.*—To adopt all such measures as may be deemed necessary or proper for the protection of strangers and the traveling public in person or property.' Article 2 of chapter 138 of the Code of 1930 relates to the granting of permits for operating motor vehicles for hire embracing sections 5596 to 5601. Section 5598 among other things provides as follows: 'The said authority [municipality] may by ordinance prescribe other reasonable rules and regulations governing the use and operation of motor vehicles for hire within the municipality, and cause the same to be observed by such driver or operator, under penalty of revocation or suspension of such permit.' The question is whether or not that language in these two sections of the Code of 1930 is a sufficient grant of authority to a Code chapter municipality to enact an ordinance such as the one here in controversy, in so far as that ordinance requires the person who desires to operate a taxicab to carry indemnity liability insurance or to file with the commissioners of the town or city an indemnifying bond.

"It does not specifically say that the municipal authorities may require such a bond, but, in the light of modern conditions, the use of automobiles on the highways, and the danger of injury to persons and property by its use, I think that by necessary implication such power is granted to the municipality as one of the things that it may require as a condition precedent to the issuance of such a permit, for the protection of the traveling public. The municipality is authorized by the first section above quoted to take such measures as may be deemed necessary for the protection of the traveling public in person or property. That implies to my mind the power to require those things to be done which will prevent the traveling public from being injured, and also to require the doing of those things which will indemnify them for the injury, in case they have been hurt. We all know that, as a matter of fact, the streets of municipalities are crowded with automobiles coming and going all the time in every direction. We all know that hardly a day passes in any municipality that we do not hear the scream of the ambulance going to some wreck where somebody has been hurt by reason of the operation of an automobile. Now the person who desires to use the highway for business purposes, to use it as a means of carrying things and persons for hire, is on a different footing from other persons. The legislative authority may single them out and require them to do certain things that it does not require of all other persons. I am of the opinion that the grant of authority contained in the two statutes above quoted is broad enough to cover the ordinance here.

"I do not think that the requirement that complainants take out liability insurance to the amount of five thousand dollars for the first person injured or ten thousand dollars for all persons injured in a single accident is unreasonable. That is the usual and ordinary

policy carried by every person who carries liability insurance on his car. I do not think such policies are written for any less. The companies will write it for ten and twenty thousand, but I know that five and ten thousand is the usual and ordinary policy written. It is said, however, that these complainants cannot secure such a policy and operate that kind of a business. That is unfortunate, but that does not make the ordinance itself unreasonable. Certain people cannot go into the jewelry business because they cannot get money enough to buy the jewels. Certain people cannot go into the business of running a cotton mill because they do not have enough money to purchase or operate it. And, if these complainants cannot get up enough money to pay the premiums, they are just not qualified to go into that business; and, if the city of Laurel is too small to afford traffic enough for them to make money enough to pay the premiums, then that is just one of the places where it is not profitable to operate that sort of a business. The fact that they are unable to pay the fees required for this liability insurance in a city of the size of Laurel by charging ten cents each time they haul a passenger does not render the ordinance unreasonable. If they cannot do it at ten cents, then they ought to charge fifteen cents or twenty cents or twenty-five cents. But the chances are that, if they should raise the fare, they would not have any passengers. I do not think the ordinance is unreasonable, nor do I think it is void for want of power to enact it.

"The next question presented is whether a contract exists between complainants and the city of Laurel. Well, here is what happened. Back in 1921 the city of Laurel passed a certain ordinance which required certain things to be done by taxi drivers before a permit should issue. But by the Code of 1930 the Legislature came along and amended that, and, in addition to those things that were

required by the ordinance of 1921, every person who wanted to operate a taxicab or motor vehicle for hire had to do certain other things required by the Code of 1930. These people undertook to comply with the ordinance of 1921 as written, but not as amended by the Code. There is no question of the right and power of the Legislature to supersede, amend, or repeal, or rather add to, any ordinance passed by the municipality. And, since the complainants never complied with the ordinance and also with the requirements of the Legislature as contained in the Code, they were not entitled to any permit. They did not get any permit. They paid the tag license fee, but they did not get a permit to operate a motor vehicle for hire. So there was no contract ever made. A municipality may pass a general ordinance which constitutes an offer, and, if the offer is accepted, then it will become a contract, but no such thing happened here. I think, therefore, that the injunction was improvidently granted, and I will sustain the motion to dissolve."

Affirmed.